UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------- x
ALFONSO CARMONA,                                :
                                                :
                       Plaintiff,               :
                                                :               **INITIAL REVIEW**
            -against-                           :               **ORDER RE:**
                                                :               **COMPLAINT**
MARYELLEN SLIYA, MATTHEW PINA, JOEL              :
FERREIRA, and UCONN HEALTH CENTER,              :               3:24-CV-814 (VDO)
                                                :
                       Defendants.              x
----------------------------------------------------------------

**VERNON D. OLIVER**, United States District Judge:

Plaintiff Alfonso Carmona, a sentenced inmate incarcerated at Osborn Correctional Institution ("Osborn"),[1] filed this case *pro se* pursuant to 42 U.S.C. § 1983 against UConn Health Center, Drs. Matthew Pina and Joel Ferreira, and New Haven Correctional Center nurse Maryellen Sliya. (Compl., ECF No. 1 at 1.) Plaintiff alleges a Fourteenth Amendment deliberate indifference claim and state law negligence claim against these defendants. (*Id.* at 7–8.) Plaintiff seeks monetary damages and declaratory and injunctive relief. (*Id.* at 8–9.)

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a government entity or officer or employee of a government entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion

---

[1] The Department of Correction website lists Plaintiff as a sentenced inmate; he was sentenced in May of 2024 to thirty-three months of incarceration and is currently housed at Osborn Correctional Institution. Connecticut State Department of Correction, *CT Inmate Info*, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=214656 (last visited August 23, 2024). The Court may take judicial notice of this website. *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *United States v. Rivera*, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate locator information); *Ligon v. Doherty*, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate locator information).

of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915(b). The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.

I. **FACTUAL BACKGROUND**

While the Court does not set forth all of the facts alleged in Plaintiff's complaint, it summarizes his basic factual allegations here to give context to its rulings below. The Court treats references to

Plaintiff alleges he entered the New Haven Correctional Center ("NHCC") on March 8, 2023, after sustaining a gunshot wound to his left arm. (ECF No. 1 ¶ 11.) Plaintiff was taken to UConn Medical Center ("UMC"), where doctors assessed his injuries and recommended surgery. (*Id.* ¶ 12.) Dr. Matthew Pina performed surgery on Plaintiff on March 17, 2023. (*Id.* ¶ 13.) Plaintiff was then outfitted with a cast and sling and ordered to attend physical therapy. (*Id.*) Dr. Joel Ferreira wrote discharge orders requiring Plaintiff to wear the cast and sling for ninety days to help his arm heal properly and prevent further damage. (*Id.* ¶ 14.)

Plaintiff sought material to cover the cast from jail nurse Maryellen Sliya during the first three days he returned to jail. (*See id.* ¶ 15.) Sliya did not help Plaintiff shower or cover the cast. (*Id.* ¶ 16.) Sliya had to remove the cast on April 20, 2023, because it got wet in the shower. (*Id.* ¶ 17.) Plaintiff's arm was in severe pain the following day. (*Id.* ¶ 18.) A nurse took Plaintiff to see Sliya. (*Id.*) Sliya told Plaintiff and the nurse that Plaintiff needed to put in a request slip to see her. (*Id.* ¶ 19.) The nurse told Sliya that Plaintiff's bone was sticking out of his arm. (*Id.*)

Plaintiff was then taken back to UConn Health Center ("UHC") to see Drs. Pina and Ferreira, who advised Plaintiff that he "re-broke" his arm and that they would have to perform surgery on it in five days. (*Id.* ¶ 20.) Plaintiff told the doctors that he was in severe pain. (*Id.* ¶ 21.) The doctors told Plaintiff that they would recommend that the jail give him pain medication. (*Id.*) When Plaintiff returned to NHCC, Sliya did not give Plaintiff pain medication or a lower bunk pass. (*Id.* ¶ 22.) In addition, Sliya did not help Plaintiff shower. (*Id.*)

UHC did not schedule Plaintiff's surgery within five days, as Drs. Pina and Ferreira ordered. (*Id.* ¶ 23.) Instead, UHC scheduled Plaintiff's surgery fourteen days after his visit with the doctors. (*Id.*) In the meantime, Plaintiff could not move from his top bunk, which prevented him from showering or eating. (*Id.* ¶ 24.) Drs. Pina and Ferreira performed surgery on Plaintiff on May 2, 2023. (*Id.* ¶ 25.) The doctors had to add extra bone and skin to repair Plaintiff's arm. (*Id.*) Plaintiff now has no feeling in three of his fingers and only limited mobility in his arm. (*Id.* ¶ 26.) He cannot lift five pounds. (*Id.*) He has not received physical therapy, despite his ongoing pain and limitations. (*Id.*)

**II.    LEGAL STANDARD**

Under 28 U.S.C. § 1915A, courts must review prisoner civil complaints in which a prisoner seeks redress from a governmental entity and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2). Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement" but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, the court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678.

With respect to *pro se* litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam)). However, *pro se* litigants are still required to comply with Rule 8 of the Federal Rules of Civil Procedure. *See, e.g., Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("[T]he basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike."). Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration in original). A statement of claim that is not short and direct places "an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Harden v. Doe*, No. 19-CV-3839 (CM), 2019 WL

2578157, at *2 (S.D.N.Y. June 24, 2019) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)) (internal quotation marks and citation omitted).

### III. DISCUSSION

Plaintiff raises a claim of deliberate indifference under the Eighth and Fourteenth Amendments and a negligence claim under Connecticut state law. (ECF No. 1 ¶¶ 27–31.)

#### A. Defendants Subject to Suit

Section 1983 "provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999). Plaintiff claims that all defendants have violated his Eighth and Fourteenth Amendment rights. (*See* ECF No. 1 ¶¶ 27–30.)

Plaintiff cannot assert any plausible claim under § 1983 against UHC because no state, state agency, or division thereof is a "person" subject to suit under 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that § 1983 claims cannot proceed against states and agencies that are "arms of the State"); *Blaine v. UConn Health Care*, No. 3:18-CV-359 (MPS), 2018 WL 1368909, at *2 (D. Conn. Mar. 16, 2018) (dismissing claim against a University of Connecticut healthcare office because it is a division of a state agency and not a "person" subject to suit). Thus, Plaintiff's deliberate indifference claim against UHC is dismissed. 28 U.S.C. § 1915A(b).

Typically, private doctors are not considered to act "under color of state law." *See, e.g.*, *Hofelich v. Hopkins*, No. 07-CV-6549FE, 2009 WL 210449, at *2 (W.D.N.Y. Jan. 26, 2009) (concluding that "Telemed Doctor is a private actor and therefore is not a 'person' acting under color of state law for purposes of 42 U.S.C. § 1983."). But "[t]here are several circumstances

5

under which a private doctor providing medical care in a private hospital could be acting under color of state law." *Coffey v. Coniglio*, No. 05-CV-6133P, 2005 WL 1631057, at *2 (W.D.N.Y. July 1, 2005). One of those circumstances is when a private doctor is hired by the state to provide medical care to prisoners. *See West v. Atkins,* 487 U.S. 42, 52 n.10, 57 (1988) (private physician hired by state to provide medical care to prisoners was state actor because doctor was hired to fulfill state's constitutional obligation to attend to necessary medical care of prison inmates). Because Plaintiff alleges that Drs. Pina and Ferreira were employed by UHC, which is contracted to provide medical care to prisoners (*see* ECF No. 1 ¶¶ 5–7), the doctors are subject to suit under § 1983.

Plaintiff sues the doctors and jail nurse in their individual capacities. (ECF No. 1 ¶ 8.) To sue a defendant in his or her individual capacity, Plaintiff must allege facts showing that each defendant against whom he seeks damages was personally involved in the alleged constitutional violation. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991)). As the United States Court of Appeals for the Second Circuit has clarified, "there is no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Thus, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against a state official without relying on a special test for supervisory liability. *Id.* at 620.

### B. Deliberate Indifference Claim for Damages

Plaintiff was a pretrial detainee when the events in question happened. (*See* ECF No. 1 at 1.) While Plaintiff brings his deliberate indifference claim under both the Eighth and Fourteenth Amendments (*see id*. ¶¶ 27–31), deliberate indifference claims brought by pretrial

6

detainees should be analyzed under the Fourteenth Amendment, not the Eighth Amendment. *See Valdiviezo v. Boyer*, 752 F. App'x 29, 32–33 (2d Cir. 2018) (summary order) (observing that pretrial detainees' claims of deliberate indifference to serious medical needs should be evaluated under Fourteenth Amendment standard rather than Eighth Amendment standard).

There are two prongs to a Fourteenth Amendment deliberate indifference to medical needs claim. Under the first prong, a detainee must allege that his or her medical need or condition was "a serious one." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). A "sufficiently serious" deprivation can exist if the plaintiff suffers from an urgent medical condition that can cause death, degeneration, or extreme or chronic pain. *Id.* at 162–63. Under the second prong, a detainee must allege that the prison official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to [him or her] even though the [prison]-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). Deliberate indifference can include indifference "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 105–06 (1976).

Plaintiff has satisfied the first prong because his broken arm was a "sufficiently serious" medical condition. *See Villafane v. Sposato*, No. 16-CV-3674 (JFB) (AKT), 2017 WL 4179855, at *20 (E.D.N.Y. Aug. 22, 2017), *report and recommendation adopted*, No. 16-CV-3674 (JFB) (AKT), 2017 WL 4157220 (E.D.N.Y. Sept. 15, 2017) (collecting cases) (finding that plaintiff's broken arm constitutes a sufficiently serious medical condition).

Plaintiff has also satisfied the second prong in his claim against jail nurse Sliya. A prison official's failure to follow a doctor's discharge orders constitutes deliberate indifference. *See*, *e.g.*, *Durr v. Slator,* 558 F. Supp. 3d 1, 23–24 (N.D.N.Y. 2021) (plaintiff's claims "that prison officials failed to follow discharge instructions of a physician to schedule further medical care for the plaintiff are sufficient to establish a claim for deliberate indifference."); *Benn v. Nassau Cnty.,* No. 10-CV-1963(JS)(AKT), 2010 WL 2976540, at *6 (E.D.N.Y. July 22, 2010) (failure to comply with doctor's order sufficient to state plausible deliberate indifference claim on initial review).

Plaintiff alleges that Dr. Ferreira wrote discharge orders requiring Plaintiff to wear the cast and sling for ninety days to help his arm heal properly and prevent further damage. (ECF No. 1 ¶ 14.) Plaintiff sought material to cover the cast from Sliya during the first three days he returned to jail (*see id.* ¶ 15), but she did not provide him anything to cover the cast. (*See id.* ¶ 16.) Sliya then had to remove the cast because it got wet in the shower. (*Id.* ¶ 17.) Removing the cast resulted in Plaintiff's bone sticking out of his arm (*id.* ¶ 19), which required another surgery. (*See id.* ¶ 20.) Because Sliya failed to follow the doctor's discharge orders to keep the cast dry, Plaintiff's deliberate indifference claim for damages against Sliya may proceed.

Plaintiff's claims against the doctors, however, must be dismissed. Plaintiff alleges that the doctors were deliberately indifferent to his medical needs because they did not perform surgery within five days, as they had ordered. (ECF No. 1 ¶¶ 23, 28–29.) However, Plaintiff does not allege that this delay in his surgery was caused by Drs. Pina and Ferreira. Instead, he alleges that UHC—not the doctors—scheduled Plaintiff's surgery fifteen days after his visit with the doctors. (*See id.* ¶ 23.) Just as an employer is not liable under § 1983 for the constitutional torts of its employees under a *respondeat superior* theory, *see Monell v. Dep't of Soc. Servs*, 436

8

U.S. 658, 694 (1978), an employee is not liable under § 1983 for the constitutional torts of his employer. *See Schwartz v. Booker*, 702 F.3d 573, 583 (10th Cir. 2012) (holding that "no DHS employee could be liable under a 'reverse respondeat superior' theory for the actions of the department."). Rather, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against a state official. *Tangreti*, 983 F.3d at 620. Because the complaint alleges that UHC scheduled the surgery, the doctors cannot be held liable for that decision. Plaintiff's deliberate indifference claim for damages against the doctors must be dismissed. 28 U.S.C. § 1915A(b).

  **C.** **Negligence Claim for Damages Under Connecticut Law**

Plaintiff also sues Defendants for negligence under Connecticut law. (ECF No. 1 ¶ 31.) He claims Defendants were negligent by delaying his surgery and by failing to treat his broken arm, provide physical therapy, or provide further examinations for his broken arm. (*Id.*) The federal claim against UHC and its doctors has been dismissed pursuant to 28 U.S.C. § 1915A(b). The district court has discretion to retain or decline supplemental jurisdiction over a state law claim asserted against a defendant who has no federal claims pending against him. *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) (noting that the court can exercise supplemental jurisdiction over a state law claim even if "asserted against a party different from the one named in the federal claim" but "[t]he fact that the district court has the power to hear these supplemental claims does not mean, of course, that it must do so. Instead, it may decline to exercise its power based on the facts laid out in 28 U.S.C. § 13676(c)."); *Kaplan v. County of Orange*, 528 F. Supp. 3d 141, 160–61 n.6 (S.D.N.Y. 2021) (declining to exercise jurisdiction over state law claims against certain defendants against whom no federal claims were pending; discussing discretion to do so; and citing cases). As the federal claims have been

9

dismissed against UHC and its doctors, the Court declines to exercise supplemental jurisdiction over the state law negligence claim against them. But because the federal claim against Sliya may proceed, the Court will exercise supplemental jurisdiction over Plaintiff's state law negligence claim against her.

To state a claim for negligence under Connecticut law, a plaintiff must adequately plead the familiar elements of duty, breach, causation, and actual injury. *Radesky v. First Am. Title Ins. Co.*, No. 02-CV-1304 (JBA), 2003 WL 22119183, at *5 (D. Conn. Aug. 29, 2003). UHC—not Sliya—was responsible for the delayed surgery. But Sliya was responsible for providing medical treatment to Plaintiff for his broken arm while in jail. As a jail nurse, Sliya had a duty to provide medical care to Plaintiff even though he had been treated by an outside doctor. *See Gil v. Vogilano*, 131 F. Supp. 2d 486, 493 (S.D.N.Y. 2001) (noting that "a municipality's duty to provide medical care to inmates is non-delegable and is not absolved by contracting with a third party to provide care."). Sliya breached that duty by failing to provide a covering for Plaintiff's cast per the doctor's order. (*See* ECF No. 1 ¶¶ 15–16.) This failure led directly to the cast becoming wet in the shower, resulting in its removal. (*Id.* ¶ 17.) Failure to ensure the integrity of the cast resulted in a compound fracture that required a second surgery and caused long-term, if not permanent, injury. (*Id.* ¶¶ 19–20, 26.) Plaintiff's negligence claim against Sliya is adequately pled at this early stage and may proceed.

### D. Request for Declaratory Relief

Plaintiff also seeks declaratory relief. (ECF No. 1 at 8–9.) Plaintiff seeks declaratory relief in the form of statements that Defendant's actions violated his Eighth and Fourteenth Amendment rights. (*Id.*) Declaratory relief serves to "settle legal rights and remove uncertainty from legal relationships without awaiting a violation of the rights or a disturbance of the

relationships." *Colabella v. Am. Inst. of Certified Pub. Accts.*, No. 10-CV-229 (KAM) (ALC), 2011 WL 4532132, at *22 (E.D.N.Y. Sept. 22, 2011) (citation omitted). As such, "[d]eclaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages." *Orr v. Waterbury Police Dep't*, No. 17-CV-788 (VAB), 2018 WL 780218, at *7 (D. Conn. Feb. 8, 2018). In *Orr*, the court dismissed the request for a declaration that the defendants had violated the plaintiff's Fourth Amendment rights during his arrest because the request "concern[ed] past actions." *Id*. As Plaintiff's request for declaratory relief here concerns a past incident, any request for declaratory relief would not be cognizable. Plaintiff's request for declaratory relief is therefore dismissed pursuant to 28 U.S.C. § 1915A(b).

  **E.**   **Request for Injunctive Relief**

  Plaintiff also seeks injunctive relief. (*See* ECF No. 1 at 9.) He seeks an order compelling Defendants to provide follow-up medical care and physical therapy. (*See id.*) But Defendants are named in their individual capacities only. (*See id.* ¶ 8.) "[I]njunctive relief against a state official may be recovered only in an official capacity suit…because [a] victory in a personal-capacity action is a victory against the individual defendant, rather than against the entity that employs him." *Marsh v. Kirschner*, 31 F. Supp. 2d 79, 80 (D. Conn. 1998) (citations and internal quotation marks omitted). Thus, Plaintiff cannot seek injunctive relief against the state officials in their individual capacities. *Altayeb v. Chapdelaine*, No. 16-CV-67 (CSH), 2016 WL 7331551, at *3 (D. Conn. Dec. 16, 2016).

  But even if Sliya had been named in her official capacity, Plaintiff has been transferred from NHCC to Osborn Correctional Institution. (*See, supra,* note 1.) Thus, his request for injunctive relief is moot. *See Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the

11

transferring facility." (citing *Young v. Coughlin*, 866 F.2d 567, 568 n.1 (2d Cir. 1989) and *Beyah v. Coughlin*, 789 F.2d 986, 988 (2d Cir. 1986))). Plaintiff's request for injunctive relief is dismissed pursuant to 28 U.S.C. § 1915A(b).

### F. Appointment of Counsel

Lastly, Plaintiff requests the Court to appoint counsel. (*See* ECF No. 1 at 10.) Plaintiff already moved for appointment of counsel. (*See* ECF No. 19.) That motion was denied. (*See* ECF No. 20.) Thus, Plaintiff is collaterally estopped from making this request again unless he has "contacted the Inmates' Legal Aid Program ("ILAP"), the organization under contract with the Department of Correction to provide legal assistance to inmates" and has been denied assistance from ILAP. (*See id.*)

## IV. CONCLUSION

Plaintiff's claims against Defendants UHC, Drs. Matthew Pina and Joel Ferreira, and the claims for declaratory and injunctive relief are **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A(b)(1), (2). The case will proceed against Defendant Maryellen Sliya in her individual capacity on Plaintiff's Fourteenth Amendment deliberate indifference and state law negligence claims for damages.

**Plaintiff has two options as to how to proceed in response to this Initial Review Order:**

(1) If Plaintiff wishes to proceed immediately **only** on the claims set forth above against Defendant Maryellen Sliya in her individual capacity only, he may do so without further delay. If Plaintiff selects this option, he shall file a notice on the docket on or before **Friday, September 27, 2024, informing the Court that he elects to proceed with service as to the**

**claims set forth in this paragraph.** The Court will then begin the effort to serve process on Defendant Silva in her individual capacity as described above.

(2) Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed in order to attempt to state a viable claim, he may file an amended complaint by **Friday, October 11, 2024. An amended complaint, if filed, will completely replace the complaint, and the Court will not consider any allegations made in the original complaint in evaluating any amended complaint.** The Court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Plaintiff elects to file an amended complaint, the complaint this Initial Review Order addresses will **not** proceed to service of process on any defendant.

If the Court receives no response from Plaintiff by **Tuesday, October 15, 2024**, the Court will presume that Plaintiff wishes to proceed on the complaint as to the claims permitted to go forward in this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Changes of Address.** If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(d) provides that he **MUST** notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify Defendants or counsel for Defendants of his new address.

**SO ORDERED.**

Hartford, Connecticut
August 28, 2024

                                            /s/ Vernon D. Oliver
                                            VERNON D. OLIVER
                                            United States District Judge